1

```
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK
 2

 3   - - - - - - - - - - - - -   X

 4   RICHARD YEBOAH,           :
                                       06 CV 0128
 5          Plaintiff         :

 6

 7          -against-         :
                                       United States Courthouse
                                       Brooklyn, New York
 8   CENTRAL PARKING SYSTEMS   :
                                       October 26, 2009
 9          Defendant.        :        2:00 o'clock p.m.

10   - - - - - - - - - - - - -   X

11

12              TRANSCRIPT OF ARGUMENT
            BEFORE THE HONORABLE KIYO MATSUMOTO
13           UNITED STATES DISTRICT JUDGE

14   APPEARANCES:

15

     For the Plaintiff:          FRAN L. RUDICH, ESQ.
16                               Klafter Olsen & Lesser LLP
                                 Two International Place
17                               Rye Brook, NY 10573

18

     For the Defendant:          JAMES N. BOUDREAU, ESQ.
19                               CHRISTINA T. WINSTON, ESQ.
                                 Littler Mendelson, P.C.
20                               1601 Cherry Street
                                 Philadelphia, PA 19102
21

22   Court Reporter:            Gene Rudolph
                                225 Cadman Plaza East
23                              Brooklyn, New York
                                (718) 613-2538
24
     Proceedings recorded by mechanical stenography, transcript
25   produced by computer-aided transcription.
```

GR      OCR      CM      CRR      CSR

1          THE COURT:  All right.  This is the plaintiff's

2   motion for class certification in the case Yeboah versus

3   Central Parking Systems, 06 CV 0128.

4          Let me please take the appearances of the parties,

5   starting with the plaintiff's first.

6          MS. RUDICH:  Yes.  Good afternoon, Your Honor.

7          My name is Fran Rudich from Klafter Olsen and Lesser

8   for the plaintiffs.

9          THE COURT:  Okay.  Thank you.

10         MR. BOUDREAU:  Your Honor, James Boudreau from

11   Littler Mendelson for the defendants, along with my associate

12   Christina Winston.

13         THE COURT:  Okay.  Thank you.

14         This is plaintiff's motion.  I will have you start.

15         I do have a preliminary question, Ms. Rudich, that

16   is, why did this motion take three years to file?  I am just

17   curious about what happened.

18         MS. RUDICH:  Let me fill you in on the procedural

19   history.

20         THE COURT:  Okay.

21         MS. RUDICH:  At the beginning of the case, or

22   probably about six months into the case, defendant's prior

23   counsel had made an offer of judgment under Rule 68 and which

24   plaintiffs did not accept.

25         At that time defendants then moved to dismiss under

GR        OCR        CM        CRR        CSR

1   a theory that the case was now moot and there was no

2   controversy to be determined.

3          That took about -- that was about six months or so

4   into the case and that decision, which was then handled by

5   Judge Dearie, took another eight months or so, maybe ten

6   months or so, to decide.

7          THE COURT:  All right.  That was on November 1st of

8   2007.

9          MS. RUDICH:  The decision or the motion?

10         THE COURT:  Yes, I think, Judge Dearie's decision.

11  Then what happened?

12         MS. RUDICH:  Then, Your Honor -- then we had -- we

13  proceeded with discovery and there were a number of discovery

14  disputes that arose in the case relating to issues that

15  plaintiffs felt were material to this rule -- to this Section

16  216(b) motion, which were decided by Judge Azrack.

17         In the interim, defendants changed attorneys, which

18  held -- which held up the case slightly, or for some length of

19  time, and myself, who handled the case also switched firms,

20  which also kind of held up the case for a while.

21         THE COURT:  Did you ever move to toll the Statute of

22  Limitations?

23         MS. RUDICH:  No, Your Honor.

24         I think it was tolled during the pendency of -- was

25  it -- it might have been tolled during the pendency of the

4

1  Rule 68 motion.

2  　　　MR. BOUDREAU:  Yes.  I think there was one month

3  toll that was stipulated to amongst the parties.

4  　　　THE COURT:  Just a 30-day tolling?

5  　　　MR. BOUDREAU:  Yes.

6  　　　THE COURT:  All right.  So you are now here for both

7  the named plaintiff Mr. Yeboah and Mr. Ofori as well, the

8  opt-in.

9  　　　MS. RUDICH:  Yes, Your Honor.

10 　　　THE COURT:  There are two very different situations,

11 correct?  I understand they were both assistant managers but

12 one was actually designated, redesignated in 2006 and the

13 other was not.

14 　　　MS. RUDICH:  Yes.

15 　　　THE COURT:  2004, excuse me.

16 　　　MS. RUDICH:  Yes.

17 　　　THE COURT:  I will hear from you.

18 　　　MS. RUDICH:  Your Honor, we believe that based upon

19 the testimony, the declarations and the exhibits and documents

20 that have been adduced thus far in the case, that we have met

21 the lenient standard required under Rule 216(b) for first

22 stage conditional certification.

23 　　　As Your Honor I'm sure is aware, at this stage there

24 is a lenient standard in which the courts do conditionally

25 certified because -- to give the people, or the similarly

GR      OCR      CM      CRR      CSR

1  situated employees notice that this case is pending and that

2  they can opt in and so that their rights can be protected.  At

3  some point later on in the case, defendants can then move to

4  decertify if and when they find they -- they find it

5  necessary.

6        Here, we have the declarations of the two opt-in

7  plaintiffs, which show that not only did they do the same

8  things, they worked in a number of different garages for the

9  defendant and at each garage they did the same thing.  So

10 there -- not only did they and do they testify as to what they

11 did at their garage, they also were at one garage they were

12 able to testify what they did in all garages.

13       There was -- there was the same job description for

14 exempt employees because, as Your Honor alluded to previously,

15 in November I think or December of 2004, defendant

16 reclassified some assistant garage managers to become

17 non-exempt and kept a bunch -- and kept a group exempt.

18       At that point they issued -- they developed a job

19 description and the job description for the non-exempt -- for

20 the exempt assistant garage managers, which is what is at

21 issue, here is the same.

22       As a matter of fact, just as an aside, the job

23 description which was attached to defendant's papers at

24 exhibit -- just give me one moment.  I think it was attached.

25 If you look at it, the job description, I will give it to you

1  in one moment.  I apologize.  I had it here.

2          (Pause.)

3          I think it's Exhibit P, Exhibit P to defendant's

4  papers.  If you look -- even if you look at the non-exempt

5  versus the exempt job description they are pretty similar.

6  They are basically, practically the same.

7          Their own internal documents itself lead to the

8  conclusion that these people were similarly situated,

9  especially when focusing on the exempt assistant garage

10 managers, which is what we are looking at here.

11         The other issue that I think is a powerful

12 indication that these people are similarly situated is at the

13 time that defendant did the reclassification or reclassified

14 some of the assistant garage managers, they kept -- they had

15 to have used a determination that the people that they did not

16 classify as non-exempt or reclassify as non-exempt were

17 similarly situated.  Otherwise, they would -- they would have

18 been classified as non-exempt when they did the

19 reclassification.

20         The mere fact that this group remained after

21 defendant allegedly went through the job duties and what these

22 people did and found that this discrete group of assistant

23 garage managers were non-exempt leads to the conclusion

24 implicit -- albeit explicitly, that they were similarly

25 situated.

1          I just want to just make one other thing clear.

2          I'm sorry?

3          THE COURT:  No.  Go ahead.

4          MS. RUDICH:  I just want to make one thing clear.  I

5    believe we emphasize this in our papers.  At this point in the

6    case, this is not the time to look at the merits of the case.

7    If you look at defendant's papers and you kind of sift

8    through, what they are really saying is they are really kind

9    of arguing that the assistant garage managers did exempt type

10   of work, they were properly classified, and that this case,

11   you know, is -- that's the basis of the case.

12          I am not arguing that that is the merits of the case

13   and that the Court will ultimately be asked to determine that.

14   But at this point, whether or not they were -- the assistant

15   garage managers were -- the exempt assistant garage managers

16   were properly classified is not at issue on this motion.  It's

17   whether or not they were subjected to a common policy, that

18   they are similarly situated, they did the same things, they

19   were treated the same way by the company.  I think that the

20   evidence that we have produced thus far shows that they have.

21          THE COURT:  Do you have a sense of the number of

22   individuals who would be class members for the Yeboah-type

23   employee who was reclassified and those who would be in the

24   category of the Ofori plaintiffs who weren't reclassified?

25          MS. RUDICH:  Yes.

1          THE COURT:  How many are we talking about?

2          MS. RUDICH:  We are not talking about any in the

3    Yeboah class because their time has run.

4          THE COURT:  Okay.

5          MS. RUDICH:  The Statute of Limitations has run.

6          In the Ofori class I believe that there are about a

7    hundred or so, maybe little bit more.

8          We -- I am not -- I don't want to give up anything

9    talked about during discovery, but I don't believe this is an

10   issue that is properly confidential.

11         We had -- we had -- we had settlement discussions

12   and in connection with those settlement discussions, defendant

13   did disclose the approximate number of the class, which is

14   about a hundred or so.

15         THE COURT:  I would have thought that you would have

16   requested that and received that in the course of discovery,

17   in any event; wouldn't you have?

18         MS. RUDICH:  We did request it and I believe that it

19   was provided.  It was about 100, 125, somewhere around there.

20         THE COURT:  All right.  Procedurally, if we have a

21   class of one in the Yeboah-type employee because everyone else

22   has stale claims, right?

23         MS. RUDICH:  Yes, Your Honor.

24         THE COURT:  The statute has run.  The defendants

25   have indicated that they don't think Ofori -- first of all,

1    he's not a named plaintiff.  We can fix that with an

2    amendment, I suppose.  But he and Mr. Yeboah are

3    completely -- they are in different categories.

4              MS. RUDICH:  Right.

5              THE COURT:  Is Yeboah really a proper class

6    representative at this point or would it be Ofori?

7              MS. RUDICH:  It would be Ofori, Your Honor.

8              What we make clear, or at least I hoped we made

9    clear in our papers, we were just moving on -- on behalf of

10   Mr. -- on behalf of Mr. Ofori and the class of similarly

11   situated exempt assistant garage managers.

12             THE COURT:  All right.  What about your state

13   claims?

14             MS. RUDICH:  We have decided not to pursue a class

15   of -- Rule 23 class for -- under the state claims.

16             THE COURT:  Okay.  So you are going to be dismissing

17   those claims or what?

18             MS. RUDICH:  Well, Mr. Yeboah and Mr. Ofori still

19   have individual class claims on their behalf.  But we are not

20   going to be requesting class certification on behalf of

21   other -- others who might have been in the class.

22             THE COURT:  All right.  Is there anything else?

23             MS. RUDICH:  No, Your Honor.

24             If you have any questions?

25             THE COURT:  Okay.  I'm sure I do.  I just wanted to

1   find out procedurally how we were going to straighten some of

2   these issues out and also whether you were conceding on the

3   state claims.  We just noticed that wasn't there.

4            I think it's unfortunate that we have this Statute

5   of Limitations issue and there was no prior opt in by anyone

6   except for Mr. Ofori up until now.

7            Let me hear from Mr. Boudreau or Ms. Winston?

8            MR. BOUDREAU:  Boudreau, yes.

9            THE COURT:  Who is going to be speaking?

10           MR. BOUDREAU:  Mr. Boudreau.

11           Your Honor, let me start first with some of the

12   procedural issues because this case is a little quirky because

13   of the procedural path that it has taken.

14           First, I think with respect to Mr. Yeboah, he has a

15   state law labor law claim as well as an FLSA claim.  As the

16   plaintiffs have conceded in their papers, Mr. Yeboah can no

17   longer move for a FLSA collective action because anybody that

18   would be in his purported class, anyone that would be

19   similarly situated to him, is time barred.

20           Mr. Ofori filed an opt-in notice, a consent form.

21   He has not filed a complaint.  He does not have a state law

22   claim.  He does not ever intimate the pursuit of his claims on

23   behalf of anyone other than himself.

24           If you read his consent form, which was filed

25   August 27, 2007, the language of his consent form says, "By my

1  signature below, I hereby authorize the filing and prosecution

2  of claims in my name and on my behalf to contest the failure

3  of Central Parking to pay me overtime wages as required

4  understate and federal law."

5          So the issue here becomes under 216(b) can Mr. Ofori

6  even move for conditional certification under Section 216(b).

7  Keep in mind, it is not class certification.  It's a very

8  different animal.

9          In 216(b), I think if you read the language, very

10 clearly provides that only an individual who files an action

11 may pursue it on behalf of others.  There has been no motion

12 to amend.  There has been no procedural device to get

13 Mr. Ofori in as a named plaintiff.  I think you said you could

14 take care of that and I suppose you could, but I don't think

15 it ultimately solves the problem.

16         It takes me to the next procedural issue here.  That

17 is, the plaintiff -- in arguing the plaintiff's counsel

18 references the lenient standard by which these conditional

19 certification decisions are made.  But this case has been

20 around for three-and-a-half years.  There has been substantial

21 discovery.  I don't want to represent that it is by any means

22 complete.  If the case were to go on, there would be some

23 further discovery.

24         The idea that three-and-a-half years after the fact,

25 after six depositions and a fair amount of exchange of

1    documents and the like, that the plaintiffs get to have a -- a

2    notice sent out to the conditional group simply because they

3    claim that their job duties are the same in contrast to what

4    the record evidence shows is a little anomalous.  In fact,

5    courts around the country are actually starting to realize

6    this because they are getting these motions with more

7    developed records, what does lenient mean.

8            There is a footnote in our brief that cites various

9    cases from around the country applying a more intermediate

10   standard.  It is not lenient.  It does not just say plaintiff,

11   what you say goes.  There should be somewhat of a more

12   searching review of the record, not necessarily what you would

13   call step two certification but certainly something in the

14   middle, a more scrutinized record, if you will, in making the

15   decision.

16           Now let's turn to the merits.  What differentiates

17   this case from virtually any other collective action you will

18   ever read about is that this is an employer who makes the

19   exemption decision on a case by case basis.  Typically, in

20   manager exemption cases, if you are a manager, you are exempt.

21   There is a uniform job description, et cetera, et cetera.

22   Those are the cases that you can read and see certified

23   through all the precedent and the like.

24           What's very different about this case is there are

25   many assistant garage managers, some are exempt, some are

1  non-exempt.  It depends what garage you work at.  It depends

2  whether there is a union present and you are a member of the

3  union.

4      THE COURT:  May I ask you something?  I think both

5  of these gentlemen submitted affidavits saying that their

6  duties have remained the same before and after this

7  reclassification and that they have also worked at other

8  garages as assistant managers and I suppose they have

9  knowledge just from their experience in the employment of your

10  client.  They said basically the functions seem to be

11  indistinguishable as far as they can tell.

12      Did I misunderstand the plaintiff's position?

13      MS. RUDICH:  No, Your Honor.

14      THE COURT:  Okay.  How do you address that?  I

15  appreciate that the employer may go case by case but it

16  appears based on the plaintiff's showing that they do the same

17  job and have done the same job.

18      MR. BOUDREAU:  Your Honor, that goes to the point

19  that the plaintiffs make.  That goes to the merits of the

20  exemption.  Does the exemption apply?  It does not go to what

21  needs to be met for the purposes of certification; that is,

22  are they similarly situated.

23      What's the test for whether someone is similarly

24  situated?  It is an undefined term.  Congress has never helped

25  anybody out.

14

1         THE COURT:  Whether they are subject to the same

2    policy of the employer, and here the policy seems to be

3    whether they are classified perhaps improperly and thereby

4    denied overtime wages, if we take that definition from the

5    case law.

6         MR. BOUDREAU:  The definition in the case law, Your

7    Honor, is that the plaintiffs in the putative collective group

8    are together victims of a single common uniform policy,

9    decision or plan.  What is the single common policy, you know,

10   uniform decision in this case?  Because the -- the assistant

11   garage managers are not all classified the same way.

12        THE COURT:  But they were until November of 2004.

13        MR. BOUDREAU:  That claim is time barred, Your

14   Honor.

15        THE COURT:  Right.

16        MR. BOUDREAU:  The question is, today, if you send

17   notice to all the assistant garage managers, some are going to

18   be exempt, some are going to be non-exempt.  It is what

19   differentiates this.  There is a policy.  It is not a common

20   uniform policy that applies to the group the same way.

21   Because of that, you can't meet the definition of similarly

22   situated.

23        It doesn't mean Mr. Yeboah doesn't have a claim.  It

24   doesn't mean that other garage managers wouldn't have a claim.

25   It just means that because of the way Central Parking makes

GR        OCR        CM        CRR        CSR

1  its decisions, there is no uniform policy or plan.  You can't

2  be similarly situated and you are not entitled to do it in a

3  collective action.

4         They can bring their claims and think about it from

5  a manageability perspective, which is actually the second

6  prong of the exemption -- of the similarly situated analysis.

7         If they are similarly situated, then you have to

8  turn to the cases.  Could this collective action be

9  successfully managed through trial?  Here, because the

10  employer goes to each garage and says every time somebody

11  transfers should they be exempt or non-exempt, do we have to

12  change their classification?  They fill out a check list.

13  They go through the report and make a decision.

14         The Court is going to have going to have to do the

15  same thing.  So there is no way that common proof can apply

16  across this proposed collective group.  Because it is entirely

17  possible, just as CPNY has already determined that a jury

18  could find certain assistant garage managers exempt and others

19  non-exempt, it doesn't mean anybody is lying.

20         THE COURT:  The plaintiff is proposing a class, or

21  why couldn't the Court authorize a class comprised of those

22  employees who are not reclassified back in November 2004,

23  those who are like Mr. Ofori, who remained in the exempt

24  assistant garage manager category?

25         MR. BOUDREAU:  Because, Your Honor, what you are

1   doing then is you are taking the job classification in the

2   supposed people who are similarly situated and dividing them

3   in two.  It turns the concept of similarly situated on its

4   head.  Because then what you are saying is -- it essentially

5   becomes a fail-safe class.  It becomes all we have to say is,

6   anybody that's exempt in the company should get notice.

7          THE COURT:  Yes.  Why not?

8          MR. BOUDREAU:  Because the job title at issue is

9   assistant garage manager.

10          THE COURT:  Right.

11          MR. BOUDREAU:  So the proposed collective group

12   can't be exempt assistant garage managers.  Because if

13   exempt -- if it's all exempt assistant garage managers, what

14   do -- where do the non-exempts go?  What do they do?  How in

15   the world could you try the case?

16          THE COURT:  I am just saying, if there were a class,

17   the notice would go only to those who are not reclassified,

18   who are assistant garage managers.

19          MR. BOUDREAU:  Right.

20          THE COURT:  Then we see who opts in and who shakes

21   out of that.

22          Go ahead.

23          MS. RUDICH:  Your Honor, I think what Mr. Yeboah --

24   I'm sorry.  Mr. Boudreau is not -- is failing to advise the

25   Court is that the exempt assistant garage managers do have a

1 separate -- different title than the non-exempt assistant

2 garage managers. They are classified within Central Parking

3 of New York with a different internal classification. I think

4 it's FNY SUP, for payroll purposes. I understand it's payroll

5 purposes. But it is clear that every exempt assistant garage

6 manager has a different payroll designation and a different

7 payroll classification or categorization as non-exempt. So

8 they are in fact distinguishable.

9 　　　　　What I think is going on, and what Mr. Boudreau is

10 doing is, what we intend to show or whether we believe we can

11 show is that the individualized exemption or the

12 individualized classification, Your Honor, and I think we

13 have -- we have some evidence of this -- was not due to the

14 job duties, not due to the job -- what they did. It was due

15 to who owned the building and what the owner of the building

16 wanted. It has really nothing to do with the actual duties

17 and that's for another day.

18 　　　　　But I think the comparison is what exempt -- exempt

19 assistant garage managers to non-exempt assistant garage

20 managers will -- will and does go to whether or not the exempt

21 assistant garage managers were properly or improperly

22 classified.

23 　　　　　But it doesn't have anything to do with whether or

24 not we can send a notice out only to those with the FNY SUP

25 payroll designation. That's clear. They are the same. There

1   is one discrete class.  It's manageable.  It's a hundred or so

2   people.  There would be no -- there would be no prejudice.

3   There would be no confusion.

4           I really think that what Mr. Boudreau is trying to

5   do is just kind of cloud the issues because I really believe

6   this is one of the few class -- cases that I have seen, and I

7   handle a lot of FLSA, where you do have a kind of discrete

8   class.  It's not going to go out to this whole nationwide,

9   thousands of people across the country who might work in

10  different divisions or different states or different

11  locations.  This is just in New York City.

12          THE COURT:  Okay.

13          MR. BOUDREAU:  Your Honor, I would like to address

14  this issue about the payroll code.  There are separate payroll

15  codes.  You can't have the same payroll code, one is exempt

16  and one is not exempt.  They are still assistant garage

17  managers.  It's the same job title, as the plaintiffs know.

18          What is the common uniform policy that applies?

19          There are several people who have been non-exempt,

20  exempt and then back to non-exempt.  Where do they come in?

21  Depending on what garage they get transferred to?

22          THE COURT:  I think that ultimately it seems the

23  cases look at the actual duties performed and the compensation

24  received.  I am not sure that we are at this point now.  But

25  in terms of the lenient standard, which I think is the

1   standard that we should apply given the remedial purpose of

2   the statute and the fact that I think that both of you through

3   the course of discovery have a sense of what universe we are

4   looking at, and because I think the plaintiff has made

5   concessions, as it must, to narrow the group of individuals

6   who would be entitled to this notice, that for purposes of

7   this initial certification it would make sense to provide a

8   more lenient standard.

9           MR. BOUDREAU:  Well, the lenient standard is a

10  different issue because it goes to the evidentiary record.

11          But, again, what's the uniform common policy?  There

12  is no common policy at CPNY to -- to designate assistant

13  garage managers as exempt.  There are assistant garage

14  managers who are exempt, some are non-exempt.

15          You need a common uniform policy.  The case law

16  makes it clear.  There isn't one here.

17          The record is very clear, that the decisions as to

18  each individual person are made individually, dependent on the

19  garage they work at.

20          If they were -- I could see a class -- a collective

21  group certified as to a particular garage, but when you get

22  outside the bounds of the garage you are dealing with the fact

23  that some are exempt, some are non-exempt.  It's not a common

24  uniform policy, decision or plan.  The case law makes clear

25  that you need that.  Otherwise, what 216(b)does by sending

1  notice, it turns it into a solicitation device.

2      Let's not forget, this case has been around for

3  three-and-a-half years, one opt-in.  People really haven't

4  wanted to get in.

5      The Court, when you read Sperling versus Hoffman

6  La-Roche, the Supreme Court decision authorizing courts to

7  exercise their discretion to extend judicial notice, they talk

8  about the balance that needs to be struck between notifying

9  timely, notifying putative claimants on a timely basis of

10  potential claims and making sure the balance being -- making

11  sure that the Court does not get involved in essentially

12  solicitation and drumming up litigation I think in claims

13  against employers that would not otherwise exist.

14      When you look at three-and-a-half years after the

15  fact with one opt-in, and it's the opt-in that's moving for

16  certification and not the named plaintiff, it raises that

17  specter.

18      THE COURT:  Would you have any objection to amending

19  the pleadings to have Mr. Ofori -- have him added to the

20  caption as named plaintiff?  Would there be any objection to

21  that?  You certainly are not prejudiced.

22      MR. BOUDREAU:  Three-and-a-half years after the

23  fact, I think we are prejudiced.

24      THE COURT:  How are you prejudiced?

25      MR. BOUDREAU:  Because --

1      THE COURT:  You have known about him since 2007,

2  correct?

3      MR. BOUDREAU:  I have no problem with Mr. Ofori

4  asserting the individual claim that he filed.  His consent

5  claim makes very clear he is asserting a claim on his own

6  behalf.  That is a very different animal than asserting

7  either, A, a state law claim, which he hasn't asserted today,

8  or a collective action claim, particularly where the doctrine

9  of relation back would tie in.

10      The short answer is no, I would have a problem with

11  it.  There may be aspects of it that I wouldn't have a problem

12  with, but I'd want to brief it.

13      MS. RUDICH:  Your Honor, if I could just say one

14  thing on this issue alone?

15      Mr. Ofori is a current employee of Central Parking.

16  He is still currently non-exempt.  We can in fact bring

17  another case on Mr. Ofori's behalf and assert the claim of

18  collective action on behalf of just the exempt people and

19  that -- then we'd have two separate cases.  Discovery is

20  already -- does Mr. Boudreau think that is efficient?  That to

21  me that's ridiculous.

22      Mr. Ofori has given us, as an attorney -- as his

23  attorney, I am standing here with authority to make him a

24  named plaintiff.  We can do that in this case.  We wouldn't

25  have to start over with discovery or have it consolidated.

22

1      THE COURT:  He's finding fault with his opt-in

2    statement saying that he is opting in to press his own claims.

3      MS. RUDICH:  I'm sorry.  If you look at Mr. Yeboah's

4    opt-in it says the same thing.  He filed it on behalf of the

5    class.  He has no problem with, you know, Mr. Yeboah.  That's

6    just a -- a term that we put in the opt-ins.  We have a

7    retainer at my office.  I could just bring another case and

8    the opt-in never says on behalf of everybody.  Just an opt-in.

9      THE COURT:  All right.

10      MS. RUDICH:  One other thing I would like to clear

11   up.

12      The Second Circuit is clear on the point that you

13   don't need to show an interest of opt-ins to have a collective

14   action certified on the first stage lenient basis.  The Second

15   Circuit -- that's just black letter law here in the Second

16   Circuit.  It might say it in Hoffman, Sperling versus Hoffman,

17   but the Second Circuit has routinely -- has routinely and

18   consistently stated that just because you don't have other

19   opt-ins doesn't mean that collective action under the first

20   stage lenient standard should not be certified.

21      THE COURT:  Okay.  Mr. Boudreau?

22      MR. BOUDREAU:  Again, Your Honor, I just want to go

23   back to the standard, that they need to demonstrate a common

24   uniform policy that applies across the collective group.  They

25   haven't done it.  They can sit there and what they have -- I

1    think what has occurred, and if you read page eight of their

2    brief, where at the very top they state -- plaintiffs

3    states --

4              MS. RUDICH:  Which brief?

5              MR. BOUDREAU:  The opening brief.

6              "The declarations and allegations in the complaint

7    coupled with defendant's admissions demonstrate that CPNY had

8    a uniform practice and policy of treating all assistant garage

9    managers the same, notwithstanding the fact that some AGMs

10   were reclassified."

11             That's not true and the record shows it.  There is

12   nothing that shows that to be the case because Mr. Yeboah

13   proves it.  He's non-exempt.  Mr. Ofori is exempt.  They are

14   both assistant garage managers.

15             I say again, where is the uniform policy that

16   applies across assistant garage managers?  You can't cut it

17   up.  Again, it's -- it becomes self-defining if you carve it

18   up and say we are just talking about the exempt ones.  That

19   doesn't satisfy -- it may satisfy a claim.  They may be

20   entitled to bring a claim, but it doesn't satisfy the standard

21   for conditional certification, even in the Eastern District of

22   New York.

23             THE COURT:  Do you want to address his contention?

24             MS. RUDICH:  Your Honor, I believe that Mr. Boudreau

25   is creating a false -- kind of a false issue here.  The common

1  policy is not the fact -- the common policies that they treat

2  it all non-exempt -- I'm sorry -- all exempt assistant garage

3  managers the same, they didn't pay them overtime when they

4  were supposed to.  That's very clear.

5         Just because -- it's not a -- a title kind of

6  analysis.  It's a similarly situated employee analysis.  The

7  fact that they might have had the same title in some

8  circumstances, and they obviously didn't for all purposes

9  within the company because, as Mr. Boudreau conceded, there

10 are different payroll titles for them.  We are looking at the

11 payroll title that applies to the assistant -- exempt

12 assistant garage managers.  That -- and nothing that

13 Mr. Boudreau or -- has stated in the papers or in today's

14 hearing has shown that there is a difference with how they

15 treat exempt assistant garage managers.

16        That's what we are looking at here.  It -- what

17 Mr. -- what Mr. Boudreau is basically saying is, as long as

18 you -- you could pick out two or three people from a specific

19 job, keep other people not getting overtime, don't pay them

20 overtime and because of that there is not a similar policy.

21 The similar policy is not paying them overtime.  It's very

22 clear, in every case.  If you look at the cases, the similar

23 policy is they treat them the same within the company.

24        They are exempt.  They treat them the same.  They

25 give them a different payroll classification, and to me that's

1   it.  There is no need to go through -- there could be many

2   reasons why they treat -- why they reclassified some, as I

3   alluded to earlier.  I believe that it had nothing to do with

4   duties.  It had to do with the building in which the -- you

5   know, these parking garages are in buildings and one of

6   the -- one of the functions of Central Parking of New York is

7   to manage these garages for the building owners.  The building

8   owners pay the payroll of the people who work within the

9   garage in the building.

10          We have evidence that one of them -- one of the

11  building owners sent a memo or an email to Central Parking

12  saying, I don't want to pay overtime to the assistant garage

13  manager in this particular garage.  So Mr. Ofori didn't get

14  overtime.  He did the same thing.

15          I am -- I am submitting that on further development

16  of the record we will show that in fact it is not because of

17  differences in what they have done.  They have a similar --

18  not because of differences in how they have -- the duties and

19  responsibilities.  It's other differences that have nothing to

20  do with the FLSA.

21          But right now, if we look at it, they treated all

22  exempt individuals the same way.  They don't pay them

23  overtime.  The declarations of Mr. Ofori and Mr. Yeboah show,

24  as well as their deposition testimony, that when they -- when

25  Mr. Ofori was transferred from garage to garage, his

26

1   classification didn't change.  He did the same thing whether

2   he was working Downtown Brooklyn or Downtown in Battery Park

3   City.  It had nothing to do with the size and --

4           THE COURT:  Have you found employees who are

5   classified differently, that is, exempt and non-exempt who are

6   assistant garage managers who do the same job?

7           MS. RUDICH:  Mr. Yeboah and Mr. Ofori.

8           THE COURT:  They have the same responsibility?

9           MS. RUDICH:  They do the exact same things.  The

10  declarations show it.  The deposition testimony showed it.

11  There is no difference.

12          We haven't been able to get, even with the documents

13  produced or the depositions that we took of -- see how -- how

14  it's different.  I am not -- that's not -- that's for another

15  day.  But my point is that they treat exempt employees -- they

16  treat exempt garage managers -- assistant garage managers the

17  same.  That's what we are looking at here.

18          THE COURT:  All right.

19          MR. BOUDREAU:  Your Honor, I don't want to keep

20  beating this, but what's the common uniform policy?  You can

21  look at every single misclassification case in this country

22  where class certification has been authorized.  I know has

23  been authorized.  You will not find one where the job group

24  consists of exempt and non-exempt.

25          Indeed, the argument typically is same job

1    description.  We have it here.  And they are uniformly

2    classified the same way.  The classification -- the law is

3    very well settled.  The classification decision itself cannot

4    form the basis of a common uniform policy -- the requirements

5    of a common uniform policy.

6            The fact of the matter here is, they have nothing

7    that shows that -- that assistant general managers are

8    uniformly classified.  If you hold that title at Central

9    Parking you may be exempt, you may be non-exempt.  It will

10   depend where you work, at what garage you work, how many

11   people you are overseeing, the nature of the parking

12   facilities, a whole host of individualized issues.

13           I don't want to get into the merits.  I just want to

14   say, there is no common uniform policy to classify assistant

15   garage managers as exempt.  If there were, they'd have a

16   different case.  Their arguments may hold some water.  You'd

17   have a lot more cases that might support the position.

18           But here, assistant general managers are not

19   classified the same way.  That's why Mr. Yeboah is non-exempt

20   and Mr. Ofori is exempt.  That is not a common uniform policy

21   sufficient to support conditional certification.

22           Your Honor, you will not find another case like this

23   in the country, where that's occurred.  Because employers as a

24   general matter do not classify on a case by case basis.  They

25   do it based on the anticipated job duties and the job titles.

1   If you look at the pharmaceutical industry, you can look at

2   all the litigation going on in this court to see that.  This

3   case is unique in that regard.

4          THE COURT:  All right.  I think at this point, based

5   on my review of the submissions of the parties, it seems to me

6   that the plaintiff has demonstrated that the policy of not

7   paying overtime to exempt assistant garage managers

8   establishes that there is a common policy and that those

9   people in that category are similarly situated.

10          I think what I would like to do is to order the

11  parties to sit down and submit a joint proposed notice that

12  will go out to the exempt assistant garage managers, who I

13  think we all agree are not earning overtime, and give

14  yourselves some time to come up with a proper notice.

15          There were some disputes about what should or should

16  not be included.  I think they seemed relatively minor and

17  they ought to be worked out between the parties.  I think

18  there was an issue about phone numbers versus addresses,

19  whether defense counsel's name ought to be included.  Those

20  are things that I think you should be able to work out.  I

21  don't see any problem with having Mr. Boudreau's name or his

22  firm's name on the notice.

23          Have you given this information already in discovery

24  or not?  Have you ever asked for it, Ms. Rudich or not?

25          MS. RUDICH:  We have asked for it.

1          THE COURT:  You have not?

2          MS. RUDICH:  We have.

3          THE COURT:  Do you have it?

4          MS. RUDICH:  But defendant has objected to providing

5    names and we kind of -- the names of these individuals and we

6    kind of decided to wait until this point in the case to obtain

7    them.  I guess now is the proper time for us to renew that.  I

8    think it's interrogatory number two.

9          MR. BOUDREAU:  Yes.  It's not an issue at this

10   point.  Once notice is approved, then we can turn over the

11   mailing list.

12         THE COURT:  Okay.  You can live without phone

13   numbers?

14         MS. RUDICH:  Yes.

15         I think Mr. Boudreau and I can work that out.  If

16   maybe -- if a notice comes back or, you know, undeliverable,

17   something like that.  We are both experienced in this area and

18   I think we can probably work out a common -- a joint notice

19   and agreement on these issues, Your Honor.

20         THE COURT:  Would you be able to agree amongst

21   yourselves as to whether you could frame the notice and send

22   it to a group that would not have -- we wouldn't have to work

23   out Statute of Limitations issues for those folks?

24         MS. RUDICH:  Yes, Your Honor.  Because the policy is

25   still going on.

1          THE COURT:  Okay.

2          MS. RUDICH:  I mean, I'm sorry, the -- the exempt

3    employees are still not getting overtime so as of today.

4    Those people, it's -- the class is still -- is kind of

5    self-renewing.

6          THE COURT:  Have you found evidence of people being

7    switched back and forth?

8          MS. RUDICH:  I was looking at the deposition

9    testimony.  I don't believe that Mr. -- the 30(b)(6) that the

10   defendants had noticed had -- had produced, I believe he

11   testified he didn't know of any situation where that happened,

12   Mr. Saad.

13         THE COURT:  I am not sure that that classification

14   is the controlling factor.

15         MS. RUDICH:  I asked him if somebody was switching

16   back and forth when they transferred to a different location.

17   I believe he said he didn't know of any situation like that.

18   But we didn't get into it that -- in that great detail because

19   of the --

20         MR. BOUDREAU:  The fact of the matter is, the list

21   of people that we would turn over would include anyone who was

22   classified at any point as exempt in the three-year look back

23   period.

24         MS. RUDICH:  Yes.  I think that would be --

25         MR. BOUDREAU:  It would capture anybody that went

GR      OCR      CM      CRR      CSR

1  back and forth.

2          THE COURT:  All right.  Today is October 26th.  We

3  are looking at sometime around Thanksgiving.  How about just

4  after Thanksgiving?

5          MS. RUDICH:  That's fine.  To submit the notice?

6          THE COURT:  To submit the agreed upon notice.

7          MR. BOUDREAU:  Frankly, Your Honor, I think we can

8  do it faster than that.

9          THE COURT:  All the better.  I just wanted to give

10 you another at least 30 days.

11         MS. RUDICH:  Two weeks, Your Honor?

12         MR. BOUDREAU:  Two weeks.

13         THE COURT:  All right.

14         MS. RUDICH:  Which is?

15         THE COURT:  I will put it in the order.

16         MS. RUDICH:  Thank you, Your Honor.

17         THE COURT:  Two weeks.

18         All right.  I think, just to be clear, I am just

19 thinking whether we have to file any notices of dismissal of

20 the parts of these.  We are pursuing the state law claims of

21 Mr. Yeboah?

22         MS. RUDICH:  On behalf of the individual.

23         THE COURT:  Individually.  Mr. Ofori has none.

24         MS. RUDICH:  No.  He has a state claim, but

25 individually.

1              MR. BOUDREAU:  He doesn't yet.

2              MS. RUDICH:  When we amend the complaint, Your

3    Honor, we do intend to add -- assert a state claim --

4              THE COURT:  All right.  Then you are going to --

5              MS. RUDICH:  -- individually.

6              THE COURT:  He will become a named plaintiff.

7              MR. BOUDREAU:  If I could suggest, I think what --

8    when you amend the complaint, take out the Rule 23

9    allegations.

10             MS. RUDICH:  I will.

11             THE COURT:  Right.

12             MR. BOUDREAU:  That will make everybody's life

13   easier down the road.

14             THE COURT:  Yes.  If you could provide a proposed

15   amended complaint to Mr. Boudreau for his review, file it

16   under cover of letter saying this is stipulated so we can

17   frame everything as cleanly and narrowly as possible and get

18   rid of those stale claims and everything else.

19             MS. RUDICH:  Do you want us to file the amended

20   complaint as a stipulated -- with a stipulation and amended

21   complaint attached?

22             THE COURT:  I think you can do it that way, sure.

23   That would make it easier.

24             MS. RUDICH:  Okay.

25             THE COURT:  Yes.

1          MS. RUDICH:  I think we will be able to work that

2     out.

3          MR. BOUDREAU:  Yes.

4          THE COURT:  Do you want two weeks for that as well?

5          MS. RUDICH:  Yes, Your Honor.

6          MR. BOUDREAU:  Yes.

7          THE COURT:  Thank you.

8          MS. RUDICH:  Thank you.

9          MR. BOUDREAU:  Thank you, Your Honor.

10          (Matter concludes.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25